The appellant was found to be in contempt of court for failure to pay alimony and child support. The trial court determined the arrearage amounted to $716, and appellant was ordered to immediately pay $461 to purge himself of contempt.
The appellant failed to pay and was incarcerated. He then filed a petition for writ of habeas corpus. He alleged he was being unlawfully imprisoned in that he was unemployed and had no cash or assets with which to meet this obligation. After a hearing in which the appellant gave oral testimony, the court denied the writ. The trial judge found the appellant did have sufficient assets and cash to comply with the order and directed that he be held in custody until the $461 was paid.
An appeal to this court then followed and we entered a stay of execution conditioned upon the appellant filing a supersedeas bond.
To this court appellant again contends he lacks the present financial ability to comply with the trial court's order. We find that the record supports this contention and reverse the denial of the writ.
The record reveals that the appellant testified below, without contradiction, that he had been unemployed since May, 1979, and that he was presently receiving $90 per week, or $360 per month, unemployment compensation. His personal assets consisted of a refrigerator, one chair, two beds, a radio, drapes, carpet, dishes, and a valueless automobile that did not run. He stated he had $40 in a checking account, $100 in a savings account, and $30 in his pocket.
His monthly obligations, including house payments, repayment of a bank loan, charge accounts, utilities, and the purchase of food totaled $380. This figure does not include his monthly support obligation to the former wife, the complainant below.
There was evidence appellant had some interest in the home in which he lived. He remembered signing papers with his new wife, from whom he was separated, but assumed she had subsequently gained title because, when she left, she "took everything else." In any event, the complainant failed to establish the exact nature of his title or the amount of appellant's equity.
Summing up this testimony, the appellant stated positively he lacked both funds and property with which to meet the trial court's order. He put forth uncontradicted figures which showed he was financially unable to purge himself of the contempt, as ordered.
Contempt proceedings such as these are quasi-criminal in nature, Robertson v. State, 20 Ala. App. 514, 104 So. 561
(1925), and when the accused puts forth evidence *Page 802 
such as we have in this instance, it then becomes the duty of the complainant to show beyond a reasonable doubt that the accused is financially able to comply with the decree. Ex parteGunnels, 25 Ala. App. 577, 151 So. 605 (1933). This the complainant failed to do.
We have long held "that imprisonment for contempt should never be imposed by a judge where the failure to pay alimony, etc., is not from contumacy, but from inability to comply with the order." Hayes v. Hayes, Ala.Civ.App., 339 So.2d 84 (1976);Muery v. Muery, 46 Ala. App. 617, 247 So.2d 123, cert. denied,287 Ala. 737, 247 So.2d 128 (1971).
In order that we not be misunderstood, let us reiterate that we are merely applying well settled principles of law to the undisputed evidence before us. We are not passing upon conflicting testimony or determining what weight to give the evidence. Such a course would be improper. Ex parte Batchelor,42 Ala. App. 2, 149 So.2d 923 (1962). Our conclusion is simply that the uncontradicted evidence established the appellant was impecunious, not contumacious. Under such circumstances, the contempt citation was unwarranted.
In view of the above, the order incarcerating the appellant is erroneous and the appellant's writ of habeas corpus is due to be granted. The appellant is therefore necessarily to be discharged from custody.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and BRADLEY, J., concur.